W.A. LeBLANC, Jr., and Ronnie C. Spivey, Plaintiffs,

v.

Paul H. BROYHILL, Broyhill Investments, Inc., Hunter Broyhill, and Gimson–Slater Furniture, Inc., Defendants.

No. ST–C–87–9.

United States District Court,
W.D. North Carolina,
Statesville Division.

Dec. 14, 1988.

Kevin L. Miller and Norwood Robinson, Petree, Stockton & Robinson, Winston–Salem, N.C., for plaintiffs.

Bruce W. Vanderbloemen, Todd, Vanderbloemen, Respess & Brady, Lenoir, N.C., William C. Raper, Womble Carlyle Sandridge & Rice, Winston–Salem, N.C., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

### I. PRELIMINARY STATEMENT

THIS MATTER is before the Court on (1) Defendant Paul H. Broyhill's Motion to Compel Production of Documents by Plain-

tiffs LeBlanc and Spivey, filed September 21, 1987, (2) Plaintiffs' Motion for Protective Orders, filed September 28, 1987, (3) Plaintiffs' Motion to Compel Production of Documents by Defendant Paul H. Broyhill, filed September 28, 1987, (4) Plaintiffs' Motion for Modification of Protective Order, filed September 28, 1987, (5) Plaintiffs' Motion to Enlarge Discovery Period, filed September 28, 1987, (6) Defendant Paul H. Broyhill's and Defendant Broyhill Investments, Inc.'s Motion for Protective Order, filed November 16, 1987, and (7) Defendants' Joint Supplemental Motion for Protective Order to Quash the Subpoena to Bruce W. Vanderbloemen and to Modify the Subpoena to Gary Renegar, filed December 9, 1988.[1] The parties have filed assorted memoranda detailing their positions on these motions.[2]

On September 30, 1988, the undersigned conducted a hearing on these motions in Charlotte, North Carolina. Norwood Robinson and Kevin Miller of the law firm Petree, Stockton & Robinson, Winston-Salem, North Carolina, appeared on behalf of Plaintiffs. Jim D. Cooley and Debbie W. Harden of the law firm Womble, Carlyle, Sandridge & Rice, Winston-Salem, North Carolina, appeared on behalf of Defendant Paul H. Broyhill and Defendant Broyhill Investments, Inc. Bruce W. Vanderbloemen of the law firm Vanderbloemen, Respass & Brady, Lenoir, North Carolina, appeared on behalf of Defendant Hunter Broyhill and Defendant Gimson–Slater Furniture, Inc. After hearing the arguments of counsel, the undersigned took these motions under advisement.

On October 11, 1988, this Court entered an Order (1) continuing this case until the April 1989 Statesville Term and (2) extending discovery for an additional ninety (90) days, measured from the date of filing of the order.

## II. NATURE OF THE CASE

This case is essentially about the existence, or nonexistence, of a joint venture agreement between W.A. LeBlanc, Jr., Ronnie C. Spivey, and Paul H. Broyhill. Plaintiffs allege that under the terms of the joint venture agreement they were each to receive a twelve and one half percent (12½%) ownership interest in a furniture manufacturing business named Gimson–Slater. Paul H. Broyhill was to own the remaining seventy-five percent (75%) of the business. Plaintiffs allege that, pursuant to the joint venture agreement, they provided their money, time, and efforts toward the successful establishment of Gimson–Slater. According to Plaintiffs, Paul H. Broyhill reneged on the deal—after Plaintiffs had substantially contributed to the successful establishment of the business—and denied Plaintiffs any ownership interest in Gimson–Slater. Plaintiffs allege that Paul H. Broyhill wrongfully incorporated the business—without informing Plaintiffs—and made himself the sole shareholder and owner of Gimson–Slater. Plaintiffs also allege that Paul H. Broyhill subsequently wrongfully transferred Gimson–Slater to Broyhill Furniture Rentals, Inc. ("BFR"), his family's business, and that BFR subsequently transferred Gimson–Slater to Hunt Broyhill, Paul H. Broyhill's son. At the end of August 1988, the assets of Gimson–Slater were sold to a Canadian firm, Sklar Peplar, for 1.3 million dollars. Plaintiffs allege that Gimson–Slater is now doing a ten million dollar ($10,000,000.00) a year business.

Plaintiffs allege that they have been defrauded. Plaintiffs also allege (1) breach of fiduciary duty, (2) civil conspiracy, (3) unjust enrichment, (4) constructive trust, and (5) the existence of an equitable lien.

## III. DISCUSSION ON PENDING MOTIONS

A. *Defendant Paul H. Broyhill's Motion to Compel Production of Documents by Plaintiffs LeBlanc and Spivey*

On September 30, 1988, the parties' attorneys informed this Court's personnel,

---

1. A copy of Defendant's Joint Supplemental Motion for Protective Order has been in the record since September 28, 1988, but Defendants did not file an original of their motion until December 9, 1988.

2. Defendants' Joint Memorandum Regarding Status of Discovery Issues, filed September 30, 1988, ("Defendants' Status Memo") has been particularly helpful to this Court.

via conference call, that this motion has been largely resolved. Defendants' Status Memo also indicates that this motion no longer requires this Court's attention. The parties' counsel did not address this motion during the September 30, 1988 hearing, and, therefore, this Court shall deem it to be moot.

### B. *Plaintiffs' Motion for Protective Orders*

#### 1. Spivey's "Redeposition"

█ Plaintiffs are seeking a protective order to prevent Defendants' attorneys from having Plaintiff Spivey appear and testify at his own deposition. Spivey has already given deposition testimony in connection with a state civil case, *Interco, Inc. v. Paul H. Broyhill, et al.,* 86–CVS–953 (Caldwell Co., Sup.Ct.), which has since been dismissed. *Interco,* apparently, shared with the present case common questions of law and fact.

Spivey's *Interco* deposition—which lasted four days—was taken pursuant to notice and subpoena issued by Broyhill Furniture, Inc. ("BFI") and Interco, Inc. Attorneys William C. Raper and Debbie W. Harden, Paul H. Broyhill's counsel in the present case, and attorney Bruce Vanderbloemen, Gimson–Slater's counsel in the present case, participated in Spivey's *Interco* deposition. Plaintiffs assert that during Spivey's *Interco* deposition he was exhaustively examined and cross-examined on virtually every nuance of the transactions that are the subject of the present case. Plaintiffs conclude that it would serve no useful purpose to have Spivey submit to deposition questioning again, given that Plaintiffs have stipulated that Spivey's *Interco* deposition could be used in any permissible manner in the present case. Plaintiffs have asked that Spivey not be required to submit to a second deposition.

Defendants contend that during Spivey's four-day *Interco* deposition their attorneys did not attempt to elicit all the information they now need for full and complete discovery in the present case. Specifically, Defendants claim that their attorneys did not examine Spivey on several subjects relevant to the present case, including (1) the specific allegations of the complaint, (2) Spivey's responses to interrogatories and document requests in the present case, (3) information regarding Spivey's finances, (4) the tracing of certain funds, and (5) certain documents Plaintiffs have not yet produced. Defendants contend that they need this additional information from Spivey to have full and complete discovery. Defendants also represent to this Court that they will (1) endeavor to avoid needless repetition of areas covered during the Spivey's four-day *Interco* deposition and (2) not repeat questions raised during that prior deposition.

During the September 30th hearing, the undersigned indicated that Defendants' counsel should have an opportunity to ask Spivey questions regarding the present case. This Court is also of the opinion, however, that Spivey should not be forced to endure another marathon deposition covering substantially the same material raised during his *Interco* deposition. Therefore, as to Spivey, this Court will deny Plaintiffs' Motion for a Protective Order and will direct Spivey to appear at his next deposition, whenever it will be scheduled and noticed. This Court will also admonish Defendants' counsel to limit their questions to matters that were not adequately explored during Spivey's *Interco* deposition. The undersigned trusts that Defendants' counsel will, in good faith, (1) endeavor to avoid needless repetition of areas covered during Spivey's four-day *Interco* deposition and (2) not repeat questions raised during that prior deposition.

#### 2. LeBlanc's Deposition

█ Plaintiffs have also asked that LeBlanc's deposition be continued until Plaintiffs' motion to intervene in the state civil case, *Interco, Inc. v. Paul H. Broyhill, et al.,* 86 CVS 953, is heard or until Defendants agree to a joint deposition of Plaintiff LeBlanc, which could be used in both the state case and in this case.

*Interco,* however, as mentioned above, has been dismissed, and Plaintiffs' motion to intervene in *Interco* was never heard or

ruled upon prior to that case being dismissed. According to Defendants' Status Memo, the parties have agreed that Plaintiff LeBlanc should be deposed for the present case, and, therefore, this Court will deem this aspect of Plaintiffs' Motion for Protective Order to be moot.

### C. *Plaintiffs' Motion to Compel Production of Documents by Defendant Paul H. Broyhill*

Plaintiffs are seeking an order from this Court compelling Defendant Paul H. Broyhill to respond fully and produce documents requested in Plaintiffs' discovery requests. Plaintiffs assert that Defendant Paul Broyhill has failed to produce virtually all the documents Plaintiffs have sought. Defendants' Status Memo indicates that Defendant Paul Broyhill intends to produce supplementary discovery materials—excluding privileged documents—in response to Plaintiffs' prior discovery requests. In addition, Defendants indicate that they are willing to provide redacted tax returns for the years 1982 to the present, which would include only those portions relating to Heirloom Leather, Gimson–Slater, or payments made or owed by Plaintiff Spivey. This Court is of the opinion that this matter has been satisfactorily resolved by the parties, but it will grant Plaintiffs' motion in part and direct Defendant Paul H. Broyhill to produce his appropriately redacted tax returns for the years 1982–1988.

### D. *Plaintiffs' Motion for Modification of Protective Order*

On July 14, 1987, a Stipulation and Protective Order was entered in this case between the parties. Plaintiffs claim, as they have a right to do under the terms of the Protective Order, that Defendants are wrongfully construing the protective order to prohibit the dissemination of documents and other discovery material that should not be protected under Rule 26(c) of the Federal Rules of Civil Procedure. In addition, Plaintiffs allege that Defendants are abusing the protective order by designating certain documents as confidential which could not possibly be confidential. Finally, Plaintiffs allege that Defendants have used the protective order in this case and a protective order in *Interco, Inc. v. Paul H. Broyhill, et al.*, 86 CVS 953 (Caldwell Co., Sup.Ct.), to prevent the efficient and fair conduct of discovery.

Plaintiffs want this Court to enter an order modifying the protective order in this action so that only those documents or information within the definition of Rule 26(c)(7) of the Federal Rules of Civil Procedure (trade secrets or confidential research, development, or commercial information) will be permitted to be designated as confidential. In addition, Plaintiffs want this Court to modify the protective order to permit the dissemination to Plaintiffs' attorneys of discovery material generated in connection with, and during the pendency of, *Interco*, since both cases apparently share the same transaction and the same set of operative facts. Plaintiffs assert that Defendants' counsel have been allowed to review all of the discovery produced in the state action while Plaintiffs' counsel have been denied the same opportunity.

Plaintiffs attempted to intervene in *Interco* to have the state court's protective order modified to allow dissemination of the discovery materials generated for that action. *Interco*, however, was voluntarily dismissed with prejudice before Plaintiffs were able to get their motion to ruled upon or heard. Therefore, Plaintiffs chose to come to this Court to get the state court's protective order modified.

Defendants object to Plaintiffs' attempt to obtain the state court discovery materials. In particular, Defendants cite *Flavorland Indus., Inc. v. United States*, 591 F.2d 524 (9th Cir.1979), and *Puerto Rico Aqueduct & Sewer Authority v. Clow Corp.*, 111 F.R.D. 65 (D.P.R.1986), for the proposition that—as a matter of Federalism—this Court should not modify the state court's protective orders.

This Court has carefully considered the parties' arguments. First, this Court is of the opinion that the protective order entered in this case should be modified to make clear that only materials within the definition of Rule 26(c)(7) of the Federal

Rules of Civil Procedure should be designated as confidential.

Second, this Court is of the opinion that Defendants should be required to disclose to Plaintiffs' attorneys discovery materials generated in connection with, and during the pendency of, the *Interco* action.[3] The protective order in *Interco* was formally entered by the Honorable Judge Gavin, Caldwell County, Superior Court, but it was only submitted for Judge's Gavin approval after all the parties in *Interco* had consented to it. This consent protective order more closely resembles a simple contract rather than a court order, and, therefore, this Court does not feel strongly constrained from ordering it to be modified to permit Defendants to disclose to Plaintiffs' attorneys discovery materials generated in connection with, and during the pendency of, the state action.[4] Plaintiffs, of course, are bound by the stipulation and discovery order entered in this case, and this Court will modify the protective order in this case to include specifically any *Interco* discovery materials.

This Court is sensitive to the values of Federalism and judicial comity, but the practical situation faced by Plaintiffs—who did, after all, try to intervene in the state court action to have the protective order modified—weighs heavily towards a practical solution. Rather than forcing Plaintiffs to file a petition with Judge Gavin or a "motion in the cause," this Court will simply direct Defendants to disclose to Plaintiffs' attorneys the discovery materials that have been already generated in the *Interco* action. The scope of what should be included in any disclosures can be worked out more precisely, if necessary, by further orders.

### E. *Plaintiffs' Motion to Enlarge Discovery Period*

As mentioned above, on October 11, 1988, this Court entered an order extending discovery for an additional ninety (90) days, measured from the filing date of the order. At the September 30th hearing, however, the undersigned indicated that discovery would be extended until February 28, 1989. This Court is of the opinion that the parties should have until and including February 28, 1989 to complete discovery, and, therefore, this Court will consider Plaintiffs' motion to be moot—since it was granted by the October 11, 1988 order—and will extend the discovery deadline to February 28, 1989.

### F. *Defendant Paul H. Broyhill's and Defendant Broyhill Investments, Inc.'s Motion for Protective Order*

Defendants are seeking a protective order staying the depositions of Gary Renegar and Bruce W. Vanderbloemen until

---

**3.** There apparently was another state case, 86 CVS 719, with facts similar to *Interco*. It is the undersigned's intention that all references to *Interco*—and the discovery material generated in connection with, and during the pendency of, that lawsuit—should apply with equal force to 86 CVS 719 and to discovery materials generated in connection with, and during the pendency of, 86 CVS 719.

**4.** Plaintiffs have provided to this Court a letter written by Steven J. Levitas, one of Interco's attorneys. The letter is dated July 8, 1987, and it is addressed to Debbie W. Harden, one of Defendants' attorneys. The letter states, in pertinent part, the following:

> I am writing to state formally our request that we be allowed to review discovery made in the federal action pending against Mr. Broyhill and others (*LeBlanc v. Broyhill,* ST–C–87–9 (W.D.N.C.)) and that we be allowed to share discovery made in our suits with the plaintiffs' attorneys in that action.

> Our request is made with the understanding that we would be subject to the protective order that has been entered in the federal suit and that [Plaintiffs' attorneys] would be subject to the protective order in our state court actions. Such an arrangement would protect any legitimate concerns your clients may have regarding confidential commercial information.

> Please let us know at your earliest convenience whether there is any possibility of negotiating an arrangement along these lines. If we are unable to do so, we would like to take this matter up with the court at the earliest opportunity.

This letter provides at least some evidence that Interco's attorneys, who were not present at the September 30th hearing in this action, would not object to disclosure to Plaintiffs' attorneys of materials generated during the pendency of *Interco*.

Paul Broyhill's pending motion to compel, filed September 21, 1987, and the other pending motions for protective orders are decided and until after Spivey and LeBlanc have given their depositions.

In this motion Defendants are basically complaining and seeking this Court's intervention to get Plaintiffs to submit to Defendants' discovery. Defendants have apparently decided that Gary Renegar and Bruce W. Vanderbloemen should not testify at their depositions until LeBlanc and Spivey testify. This Court is of the opinion that this motion is without merit and should be summarily denied.

### G. *Defendants' Joint Supplemental Motion for Protective Order to Quash the Subpoena to Bruce W. Vanderbloemen and to Modify the Subpoena to Gary Renegar.*

There are two main subjects raised in this motion: (1) the Subpoena Duces Tecum and Notice of Deposition issued to Bruce W. Vanderbloemen and (2) the Subpoena Duces Tecum and Notice of Deposition issued to Gary Renegar.

#### 1. Bruce W. Vanderbloemen

■ Attorney Bruce W. Vanderbloemen represents Hunter Broyhill and Gimson–Slater, although the assets of that company have recently been sold to a Canadian firm, Sklar–Peplar. Mr. Vanderbloemen was the incorporator for Gimson–Slater. Mr. Vanderbloemen also prepared several key recorded minutes of shareholders' and directors' meetings for both Gimson–Slater and Broyhill Furniture Rentals; no actual meetings were held before these minutes were prepared.[5]

On November 4, 1987, Plaintiffs served a notice of deposition upon Mr. Vanderbloemen, and issued a subpoena duces tecum requiring Mr. Vanderbloemen to bring to the deposition:

1. All documents or records within your possession or control pertaining to Heirloom Leather Shop of North Carolina, Inc., its predecessors, affiliates, subsidiaries, parents, successors in interest, or the Leather Showroom in North Carolina.

2. All documents or records within your possession or control pertaining to Gimson Slater Furniture, Inc., its predecessors, affiliates, subsidiaries, parents and successors in interest.

Defendants claim that this discovery on Mr. Vanderbloemen will violate the attorney-client privilege and require the production of attorney work-product. Defendants assert that Plaintiffs have failed to show "good cause" or the need for the deposition of Mr. Vanderbloemen. Defendants suggest, as an alternative, a deposition upon written questions, pursuant to Rule 31 of the Federal Rules of Civil Procedure. Defendants want the subpoena duces tecum quashed and a protective order preventing the deposition of Mr. Vanderbloemen.

This Court is of the opinion that Mr. Vanderbloemen should make himself available for his own deposition in this case. He may very well possess information that is not protected by the attorney-client communications privilege or the attorney work-product privilege. Plaintiffs attorneys should be given the opportunity to ask Mr. Vanderbloemen whatever questions they wish; if Mr. Vanderbloemen does not wish to answer the question—presumably because it would require the inappropriate disclosure of information legitimately covered by the attorney-client communications privilege or the attorney work-product privilege—then he can object at his deposition. The parties will then be free to return to this Court with specific controversies regarding specific applications of the privileges. Exceptions to the privileges may well be applicable.[6] Plaintiffs have

---

**5.** The minutes bear the following legend:
These minutes were written subsequent to the dates noted and without actual meetings held. However, these minutes accurately reflect the events that took place and are placed here for the purpose of a chronological record.

**6.** *See, e.g., Parkway Gallery v. Kittinger/Pennsylvania H. Group,* 116 F.R.D. 46, 52 & n. 3 (M.D. N.C.1987) (noting that crime-fraud exception applies to attorney-client privilege); *Union Camp Corp. v. Lewis,* 385 F.2d 143 (4th Cir.1967) (same).

managed to show with sufficient persuasive force that Mr. Vanderbloemen may know facts that no other person may know, and, therefore, good cause exists for him to submit to deposition questioning.

After Mr. Vanderbloemen has given his deposition, he may well have to decide whether he can ethically continue to represent his clients in this case. This Court at this juncture, however, is unwilling to prohibit his deposition simply because he is now representing 'some of the parties.

Defendants have not said much specifically regarding the subpoena duces tecum to Mr. Vanderbloemen. Defendants simply assert that the subpoena duces tecum to Mr. Vanderbloemen should be quashed because "[P]laintiffs have failed to make the requisite showings." It is actually Defendants who have failed to establish to this Court's satisfaction that any of the documents sought by the subpoena duces tecum are covered by the attorney-client communications privilege or the attorney work-product privilege. If Defendants believe in good faith that these privileges apply to any or all of the documents in Mr. Vanderbloemen's possession, then Defendants should submit copies of those documents to this Court—under seal—for an in camera inspection. If Defendants choose to seek an in camera inspection for certain documents, then they should also provide accompanying memoranda detailing the nature of the privilege asserted as well as any possible exceptions that this Court may be compelled to apply. At this stage, this Court does not believe the subpoena duces tecum to Mr. Vanderbloemen should be quashed.

### 2. Gary Renegar

■ Gary Renegar is an accountant in the firm Deloitte, Haskins & Sells ("DH & S"). Mr. Renegar and DH & S have served as accountants for Defendants throughout the relevant time period of this lawsuit. Defendants object to the scope of a subpoena duces tecum served on Renegar.

The subpoena duces tecum requested Renegar to produce the following:

1. All documents or records within your possession or control pertaining to Gimson Slater Furniture, Inc. or its predecessor entity, including, but not limited to, tax returns, accounting work papers, profit and loss statements, balance sheets and spread sheets.

2. All documents or records within your possession or control pertaining to Heirloom Leather Shop of North Carolina, Inc. its predecessors, affiliates, subsidiaries, parents or surviving entity, including, but not limited to, tax returns, accounting work papers, profit and loss statements, financial statements, balance sheets and spread sheets.

3. All documents used in preparing individual Federal Income tax returns for Paul H. Broyhill and copies of such tax returns for the years 1982 to the present.

4. All tax returns for Broyhill Furniture Rentals, Inc., or Broyhill Furniture Rentals and Sales, Inc. from 1982 to the present.

Defendants claim that the scope of these requests is beyond the relevant scope of this case and will probe into areas protected by privilege.

This Court is of the opinion that Mr. Renegar should not be required to produce any of the tax returns for any of the Defendants or any documents that will violate any valid privilege. If Mr. Renegar has in his possession documents that he believes in good faith to be covered by a valid privilege, then he should submit such documents to this Court—under seal—for an in camera inspection. Again, if an in camera inspection procedure is sought, Defendants should also include memoranda detailing the nature of the privilege asserted. Otherwise, Mr. Renegar should comply with the terms of the subpoena duces tecum.

Defendants have essentially conceded that Mr. Renegar is an appropriate witness for a deposition, and, therefore, this Court believes there is no reason to attempt to delineate what the appropriate scope of his deposition should be. If specific problems occur during the Mr. Renegar's deposition, then the parties are free to return to this

Court with specific, articulated, disputes regarding privileges and relevancy. At this point, this Court is unwilling to delay or limit Mr. Renegar's deposition.

## IV.  CONCLUSIONS

NOW, THEREFORE, IT IS ORDERED:

(1) Defendant Paul H. Broyhill's Motion to Compel Production of Documents by Plaintiffs LeBlanc and Spivey, filed September 21, 1987, is hereby deemed to be MOOT;

(2) Plaintiffs' Motion for Protective Order, filed September 28, 1988, is DENIED, as to Plaintiff Spivey, and is hereby deemed to be MOOT, as to Plaintiff LeBlanc:

> (a) Plaintiff Spivey is directed to appear at his next deposition, whenever that will be scheduled and noticed;
>
> (b) Defendants' counsel are hereby admonished to limit their deposition questions to Spivey to matters that were not adequately explored during Spivey's *Interco* deposition; Defendants' counsel are directed to (i) endeavor to avoid needless repetition of areas covered during the Spivey's four-day *Interco* deposition and (ii) to not repeat questions raised during that prior deposition;

(3) Plaintiff's Motion to Compel Production of Documents by Defendant Paul H. Broyhill, filed September 28, 1987, is GRANTED IN PART and DENIED IN PART:

> Defendant Paul H. Broyhill is directed to produce his redacted tax returns for the years 1982–1988, including only those portions which relate in any way to Heirloom Leather, Gimson–Slater, or payments made to, or owed by, Plaintiff Spivey;

(4) Plaintiffs' Motion for Modification of Protective Order, filed September 28, 1987, is GRANTED:

> (a) the stipulation and protective order entered in this action on July 14, 1987 is MODIFIED so that only those documents within the definition of Rule 26(c)(7) of the Federal Rules of Civil Procedure may be designated as confidential;
>
> (b) Defendants' counsel are directed to disclose to Plaintiffs' counsel discovery material generated in connection with, and during the pendency of, *Interco, Inc. v. Paul H. Broyhill, et al.*, 86 CVS 953 (Caldwell Co., Sup.Ct.);
>
> (c) the protective order entered in this action on July 14, 1987 is hereby MODIFIED to include within its scope all *Interco* discovery material disclosed to Plaintiffs and their attorneys;

(5) Plaintiff's Motion to Enlarge Discovery Period, filed September 28, 1987, is hereby deemed to be MOOT, since it was previously granted;

(6) Defendant Paul H. Broyhill's and Broyhill Investments, Inc.'s Motion for Protective Order, filed November 16, 1987, is DENIED; and

(7) Defendants' Joint Supplemental Motion for Protective Order to Quash the Subpoena to Bruce W. Vanderbloemen and to Modify the Subpoena to Gary Renegar, filed December 9, 1988, is GRANTED IN PART and DENIED IN PART:

> (a) the subpoena duces tecum served upon Gary Renegar is MODIFIED so that he will not be required to produce the tax returns of any Defendants for the tax years 1982 to the present;
>
> (b) Bruce W. Vanderbloemen shall appear for his own deposition, whenever it shall be scheduled and noticed;
>
> (c) Bruce W. Vanderbloemen shall produce all documents requested in the subpoena duces tecum served upon him in this action unless he chooses to submit such documents to this Court—under seal—for an in camera inspection;
>
> (d) Gary Renegar shall appear at his own deposition, whenever it shall be scheduled and noticed;
>
> (e) Gary Renegar shall produce all documents requested in the subpoena duces tecum served upon him in this action unless he chooses to submit such documents to this Court—under seal—for an in camera inspection.

IT IS FURTHER ORDERED that the discovery period in this action shall be extended to and including February 28, 1989. The parties should expect to try this case in Statesville sometime during April 1989.

IT IS FURTHER ORDERED that each party shall pay his or its own costs and expenses incurred in bringing or responding to the present motions.